IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUAN A.[1]

Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 3:25-cv-02138-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Juan A. ("Plaintiff") filed this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision and remands for further administrative proceedings.

///

///

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party.

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court's review is limited because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.'" *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff was born in July 1983, making him forty years old on April 29, 2024, his alleged disability onset date. (Tr. 71.) Plaintiff has completed "four or more years of college." (*Id.* at 275.) His past relevant work experience extends from 2006 to 2024 in electrical and semiconductor engineering, and he is a veteran of the United States Marine Corps ("USMC"). (*Id.*)

In his DIB application, Plaintiff alleges disability due to "[post-traumatic stress disorder ("PTSD")] [100-percent], [twenty-percent] Right Achilles tendonitis, [ten-percent] Scar-Left upper lip, [ten-percent] Bilateral Tinnitus, [ten-percent] Right Knee-Limitation of Flexion, [twenty-percent] left Achilles tendonitis, [ten-percent] Left Knee-Limitation of Flexion, [ten-percent] Right Knee-Instability, [ten-percent] Left Knee limitations of Instability, [and] [thirty-percent] Left Knee limitations of Extension." (*Id.* at 58.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on November 8, 2024, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 117-18.) On April 18, 2025, Plaintiff, appearing with his counsel of record, testified at an online hearing before an ALJ, along with an impartial vocational expert ("VE"). (*Id.* at 23.) On July 24, 2025, the ALJ issued a decision denying Plaintiff's application. (*Id.* at 10.) The Appeals Council denied Plaintiff's request for review on September 24, 2025, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 6.) Plaintiff now seeks judicial review of that decision.

### II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

To establish a "prima facie case of a disability," a claimant must demonstrate "at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the past, or that she has a severe impairment and has no relevant past work[.]" *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). If the claimant does so, "[t]he burden then shifts to the Commissioner at step five to establish that the claimant can perform a 'significant number[]' of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience." *Id.* (first quoting 20 C.F.R. § 416.960(c)(2); and then citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). "If the Commissioner meets her burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955 (simplified).

## III. THE ALJ'S DECISION

The ALJ applied the sequential evaluation process to determine if Plaintiff is disabled. (Tr. 71-85.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 29, 2024. (*Id.* at 73.) At step two, the ALJ found that Plaintiff suffered from

the severe impairment of "posttraumatic stress disorder, bipolar disorder, anxiety disorder, depressive disorder, and left ankle disorder." (*Id.*) At step three, the ALJ determined that the Plaintiff did not have an impairment that met or equaled a listed impairment. (*Id.* at 74.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform work subject to the following exceptions and limitations: (1) Plaintiff can occasionally climb ladders, ropes, or scaffolds, (2) Plaintiff can frequently climb ramps, stairs, and balance, (3) Plaintiff "can tolerate occasional exposure to hazards, such as working in high, exposed places, and proximity to moving mechanical parts," and (4) Plaintiff "is capable of simple, routine tasks and simple work related decisions." (*Id.* at 76.) At step four, the ALJ found that Plaintiff was unable to perform his past relevant work experience. (*Id.* at 83.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including "collator operator" and "outside deliverer." (*Id.* at 84-85.)

**DISCUSSION**

In this appeal, Plaintiff argues that the ALJ erred in four principal ways. First, Plaintiff argues that the ALJ erred by failing to provide specific, clear, and convincing reasons for discounting his symptom testimony supported by substantial evidence in the record. (Pl.'s Opening Br. at 1, 3, ECF No. 7.) Second, Plaintiff argues that the ALJ erred by failing to explain his "material departure from the prior administrative medical findings of Irmgard Friedburg, Ph.D. [("Dr. Friedburg")] and Winifred C. Ju, Ph.D. [("Dr. Ju") (together "the State Agency Consultants")]." (*Id.*) Third, Plaintiff argues that the ALJ erred by failing properly to "assess the opinion from examining nurse practitioner, Thomas W. Breyer, PMHNP [("NP Breyer")]." (*Id.*) Fourth and finally, Plaintiff argues that the ALJ erred by determining that the vocational evidence at step five was sufficient to support her decision. (*Id.*)

For the reasons discussed below, the Court reverses the Commissioner's decision and remands for further administrative proceedings.

## I. PLAINTIFF'S SYMPTOM TESTIMONY

### A. Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified). "[T]he 'clear and convincing' standard requires an ALJ to show [her] work[.]" *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quoting *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021)). That "assure[s a] reviewing court that [the ALJ] did not arbitrarily discredit [the claimant's] testimony." *Cope v. Bisignano*, No. 25-2337, 2026 WL 1134289, at *1 (9th Cir. Apr. 27, 2026) (simplified). Satisfying this standard turns on "whether the ALJ's rationale is clear enough that it has the power to convince," not on "whether [the] court is convinced[.]" *Smartt*, 53 F.4th at 499.

### B. Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 77, finding that Plaintiff's "medically determinable impairments

could reasonably be expected to cause the alleged symptoms”). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff’s testimony. *See Ghanim*, 763 F.3d at 1163.

### 1. Plaintiff’s Mental Health Related Testimony

At the hearing, when asked what would prevent Plaintiff from performing a simple job, Plaintiff testified that “his mental” would, specifically “if [he] sit[s] there too long, [he] start[s] trailing away thinking [he] could be doing something greater like . . . literally trying to save the world.” (Tr. 32.) Plaintiff then stated that he “really want[s] to have some type of impact and the stress starts to build up” and “[by] the third day, [he] will start feeling like [he] could do so much for the world than this simple task.” (*Id.*) When Plaintiff was asked whether he takes medicine for his mental health issues, Plaintiff responded that he is “afraid of them because they mess up your doses just a little bit, you go from being fine to wind up putting a barrel in your mouth.” (*Id.* at 34.) When discussing having been “fired from every job after the Marine Corps,” Plaintiff testified that “sometimes it eats away at me, the depression and anxiety . . . all your brothers died, brothers and sisters and there’s so much you can do.” (*Id.* at 35.)

When asked about his panic attacks, Plaintiff testified that his last major attack in 2021 was a fifteen “on a scale from one to ten,” but that he has minor ones that are “sevens and eights,” including one that occurred the morning of the hearing. (*Id.* at 38.) Plaintiff testified that the cause of his panic attacks is “[his] mind just telling [his] body that [he’s] in a life or death situation and then [his] heart starts pounding.” (*Id.*) When asked if he had found ways to cope, Plaintiff testified that he is “doing [his] best,” but that it takes “a lot of [his] mental fortitude and a lot of [his] day just to be able to be normal.” (*Id.*)

Plaintiff stated in his function report that “[his] PTSD, which manifests itself as . . . anxiety, and panic attack[s] is taking a larger toll on my heart.” (*Id.* at 290.) As a result of his

depression, Plaintiff experiences less socialization. (*Id.* at 310.) Plaintiff also stated that "when having a 'flare up' [his] PTSD affects everything about life." (*Id.* at 295.)

**2. The ALJ's Evaluation of Plaintiff's Testimony**

The ALJ concluded that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms . . . do not support greater limitations than provided in the [RFC]." (*Id.* at 80.) The ALJ then discussed Plaintiff's physical impairments at length, but "[r]egarding [Plaintiff's] mental health impairment," the ALJ noted only that (i) "in May 2024, [Plaintiff] reported he was overall in a very good place mentally and psychologically as he was currently running his own nonprofit to expand vertical horticulture in urban environments throughout the world" and (ii) Plaintiff performed well at mental status exams despite reports of mania. (*Id.*) The ALJ did not address Plaintiff's testimony regarding his mental health impairments.

**3. Disposition**

The Court concludes that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence in the record, to discount Plaintiff's mental health symptom testimony.

**a. Plaintiff's Testimony**

As a threshold matter, the ALJ did not specifically address or discount any of Plaintiff's statements—from either his function report or the hearing—regarding his mental health impairments. (*Id.* at 71-85.) This was error and requires remand for further proceedings. *See* *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints—'[g]eneral findings are insufficient.'") (citation omitted).

///

### b. Plaintiff's Nonprofit Work

Even if the ALJ's analysis could be construed as discounting Plaintiff's testimony, the ALJ erred because the stated reasons for discounting Plaintiff's symptoms were not supported by substantial evidence in the record.

An ALJ may discount a claimant's symptom testimony based on activities that are incompatible with the claimant's testimony regarding the severity of his symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination") (citation omitted); *Garrison,* 759 F.3d at 1016 (finding that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"). Notably, however, there must be a meaningful inconsistency between the claimant's daily activities and symptom testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed harmful error in discounting the claimant's symptom testimony and explaining that the claimant's "limited daily activities were not meaningfully inconsistent with her symptom testimony") (citation omitted).

Here, in discounting Plaintiff's mental health symptoms, the ALJ noted that, in May 2024, Plaintiff "reported he was overall in a very good place mentally and psychologically as he was currently running his own nonprofit to expand vertical horticulture in urban environments throughout the world." (Tr. 80.) At the hearing, the ALJ asked whether Plaintiff was still working roughly "three hours a day, three days a week." (*Id.* at 29-30.) Plaintiff explained, however, that he could work for his nonprofit only about "an hour a month." (*Id.*)

The Court agrees that the ALJ erred by discounting Plaintiff's symptoms based on the limited work he performed for his nonprofit. As an initial matter, Plaintiff's unsuccessful work

attempt does not provide a valid basis to discount his symptom testimony. *See Brian D. v. Comm'r Soc. Sec. Admin.*, No. 3:18-cv-02061-IM, 2020 WL 1522680, at *6 (D. Or. Mar. 30, 2020) ("[A]s the Ninth Circuit has long rejected penalizing claimants for attempting employment, Plaintiff's comment that he would love to work should not be used against him.") (citation omitted); *see also Lingenfelter*, 504 F.3d at 1038-39 (holding that a claimant should not be punished for attempting to work). In addition, the ALJ did not account for Plaintiff's reported decrease in the already minimal number of hours he was working for the nonprofit. Nor did the ALJ explain how one hour of work per month (or even nine hours per week) was meaningfully inconsistent with Plaintiff's testimony concerning his mental health symptoms.

For these reasons, the Court finds that substantial evidence does not support the ALJ's discounting of Plaintiff's mental health symptoms based on the limited work he performed for his nonprofit organization.

**c. Plaintiff's July 2024 Mental Status Exam**

"[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (citing *Burch*, 400 F.3d at 680); *see also McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (noting that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination") (citations omitted); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that even "[a]ssuming that [the claimant's] testimony regarding her physical impairments was not supported by the objective medical evidence, the ALJ cannot properly rely on that as the sole reason to discredit her testimony" (citing *Burch*, 400 F.3d at 681)).

Here, the ALJ noted that one July 24, 2024, mental status examination showed Plaintiff to "be alert and attentive," that his "appearance and behavior were appropriate," that he was

"engaged and maintained good eye contact," with normal speech and language intact, that his "[m]ood was euthymic, with congruent affect," and "[n]o perceptual disturbance was reported." (Tr. 81.) In addition, the ALJ noted that this mental status exam revealed that Plaintiff's "[t]hought process was normal, coherent, and somewhat circumstantial," his "[t]hought content was unremarkable," and his "[i]nsight and judgment were good." (*Id.*) Those observations are not inconsistent with Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1164 (rejecting the ALJ's reliance on "good eye contact, organized and logical thought content, and focused attention" and "cognitive functioning" because they "do not contradict [the claimant's] reported symptoms of depression and social anxiety"); *see also Janet M. v. Comm'r of Soc. Sec. Admin*, No. 6:21-cv-00725-AR, 2023 WL 3318777, at *4 (D. Or. May 9, 2023) (rejecting reliance on mental status exams showing the plaintiff was "pleasant and cooperative," "well-groomed, and 'engaged and active in the conversation'" as a reason to discount the plaintiff's symptom testimony about her anxiety, depression, panic, and PTSD); *Nicole N.-M. v. Comm'r of Soc. Sec. Admin*, 649 F. Supp. 3d 1025, 1037 (D. Or. 2022) ("The ALJ fails to explain why the findings related to Plaintiff's demeanor and cognition undermine Plaintiff's symptoms."); *Jonna S. v. Comm'r of Soc. Sec. Admin*, No. 3:18-cv-02236-HZ, 2020 WL 5847090, at *6 (D. Or. Sept. 29, 2020) ("Plaintiff's normal mental status exams at these appointments do not conflict with Plaintiff's impairments of agoraphobia, anxiety, and panic.") (citation omitted); *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1219 (D. Or. 2015) (rejecting reliance on observations that the plaintiff was "alert" with normal affect and speech as a reason to discount the plaintiff's mental health symptom testimony).

In any event, having found that the ALJ's other reasons to discount Plaintiff's testimony were legally insufficient, inconsistent objective medical evidence cannot be the only reason to

discount Plaintiff's symptom testimony. *See Christa W. v. Kijakazi*, No. 1:22-cv-01293-SB, 2023 WL 6972455, at *12 (D. Or. Oct. 23, 2023) ("[T]he lack of supporting or inconsistent objective medical evidence cannot provide the sole basis for discounting a claimant's testimony. . . . Accordingly, the Court concludes that the ALJ committed harmful error." (first citing *McClaren*, 812 F. App'x at 501; then citing *Valdez*, 746 F. App'x at 677; and then citing *Taylor*, 720 F. App'x at 907)); *Ortiz v. Berryhill*, No. 2:17-cv-06243-JDE, 2018 WL 3655411, at *4 (C.D. Cal. July 31, 2018) (reversing and remanding where "[t]he only articulated reason for finding Plaintiff only partially credible was 'the medical records do not support the alleged severity of his symptoms'").

For these reasons, the Court concludes that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's symptom testimony.

## II. MEDICAL OPINION TESTIMONY

Plaintiff argues that substantial evidence does not support the ALJ's evaluation of the medical opinions from the State Agency Consultants and NP Breyer. (Pl.'s Opening Br. at 4-11.)

### A. Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017." *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416)). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods*

*v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b)).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an ALJ concludes that "two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' must the ALJ then articulate how [she] considered these other factors." *Id.* at 1214 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

Where, as here, the new regulations apply, a district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("For claims subject to the new regulations, . . . an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)); *see also Stiffler*, 102 F.4th at 1108 ("In sum, the ALJ's evaluation of [the physician's] medical opinion is supported by substantial evidence.").

**B. Analysis**

Plaintiff argues that the ALJ erred by failing to explain his "material departure from the prior administrative medical findings of the State Agency Consultants in accounting for Plaintiff's moderate limitations in formulating the RFC." (Pl.'s Opening Br. at 1, 3.) Plaintiff also argues that substantial evidence does not support the ALJ's determination that NP Breyer's opinion was unpersuasive. *(Id.* at 8.)

**1. State Agency Consultants' Medical Opinions**

The State Agency Consultants concluded that Plaintiff has "severe medically determinable impairments of trauma- and stressor-related disorders and anxiety and obsessive-compulsive disorders." (Tr. 82.)

In her assessment, Dr. Friedburg opined that Plaintiff had a "moderately limited" ability "to sustain an ordinary routine without special supervision," as well as a "moderately limited"

ability to "carry out detailed instructions." (*Id.* at 54-55.) Dr. Friedburg concluded that Plaintiff has "[n]o issues with simple tasks." (*Id.* at 54.)

Likewise, Dr. Ju concluded that Plaintiff was "moderately limited" in his "ability to carry out detailed instructions" as well as in his ability to "maintain attention and concentration for extended periods of time." (*Id.* at 65.) Dr. Ju further concluded that Plaintiff is "capable of sustaining [concentration, persistence, or pace ("CPP")] for short/simple and detailed, but not complex tasks." (*Id.*)

**a. The ALJ's Findings**

The ALJ found that the State Agency Consultants' opinions were "persuasive" because they were "supported by the record and consistent with the evidence." (*Id.*)

**b. Disposition**

The Court finds that the ALJ erred by finding the State Agency Consultants' opinions were persuasive but then failing to incorporate all of their proffered limitations into the RFC.

**1) Moderate Limitation in Concentration, Persistence, and Pace**

Both Drs. Friedburg and Ju opined that Plaintiff was "moderately limited" in his ability to "carry out detailed instructions" and Dr. Ju further opined that Plaintiff was "moderately limited" in his ability to "maintain attention and concentration for extended periods of time." (*Id.* at 54, 65.) Despite these limitations, Dr. Friedburg concluded that Plaintiff would have "[n]o issues with simple tasks" (*id.* at 54) and Dr. Ju similarly concluded that Plaintiff is "capable of sustaining CPP for short/simple and detailed, but not complex tasks" (*id.* at 65). In the RFC, the ALJ limited Plaintiff to "simple, routine tasks and simple work related decisions." (*Id.* at 41.)

The Ninth Circuit has recognized that an RFC "adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified

in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (citation omitted). Here, the State Agency Consultants found that Plaintiff has moderate limitations with respect to concentration, persistence, or pace, but both found that he was nevertheless capable of performing simple, routine tasks. (Tr. 54, 65.) The Court finds that the ALJ appropriately translated the State Agency Consultants' limitations into their own concrete restrictions, i.e., simple and routine tasks. *See Stubbs-Danielson*, 539 F.3d at 1174 ("The ALJ translated [the claimant]'s condition, including the pace and mental limitations, into the only concrete restrictions available to him—[the medical opinion]'s recommended restriction to 'simple tasks.'"); *see also Leighton N. v. Comm'r, Soc. Sec. Admin.*, No. 6:21-cv-00764-YY, 2023 WL 2524030, at *4 (D. Or. Mar. 15, 2023) ("[H]ere, the ALJ translated [the] plaintiff's condition, including the pace and mental limitations, into [the medical opinion's] recommended restriction to simple and routine tasks."); *cf. Francisco D. v. Saul*, No. 3:19-cv-00780-SB, 2020 WL 3448085, at *9 (D. Or. June 24, 2020) ("[T]he Court concludes that the ALJ committed reversible error in formulating Plaintiff's RFC because no medical provider concluded that Plaintiff could perform unskilled work and simple, routine, repetitive tasks and make simple work-related decisions, despite his moderate limitations in concentration, persistence, or pace.").

Where the State Agency Consultants specifically opined that Plaintiff could perform simple and routine work despite his moderate CPP limitations, the ALJ adequately incorporated Plaintiff's moderate CPP limitations by limiting Plaintiff to simple and routine work.

**2) Moderate Limitation in Ability to Sustain an Ordinary Routine Without Special Supervision**

Dr. Friedburg also found that Plaintiff's ability "to sustain an ordinary routine without special supervision" was moderately limited (Tr. 54-55), which the ALJ did not translate into any concrete restrictions in Plaintiff's RFC.

"[D]istrict courts within the Ninth Circuit . . . have held that a limitation to simple work does not account for a moderate limitation in Plaintiff's ability to 'perform work activities without special or additional supervision.'" *Ray v. Bisignano*, No. 1:25-cv-001177-SKO, 2026 WL 1847360, at *7 (E.D. Cal. June 26, 2026) (collecting cases); *see also Gowan v. Comm'r of Soc. Sec.*, No. 1:23-cv-00598-DAD-AC, 2024 WL 3372470, at *3 (E.D. Cal. July 11, 2024) ("[T]he RFC's restriction to 'simple, routine and repetitive tasks' did not account for limitations to plaintiff's ability to . . . perform work activities without additional or special supervision.").

The ALJ's RFC did not address any limitations in Plaintiff's ability "to sustain an ordinary routine without special supervision." (Tr. 54.) Having found Dr. Friedburg's opinion persuasive, the ALJ was required to incorporate her proffered moderate limitations into the RFC or explain why not. *See Martin v. Comm'r of Soc. Sec. Admin.*, 472 F. App'x 580 (9th Cir. 2012) ("The [ALJ] erred when formulating [the claimant's] [RFC] because the RFC neither incorporated Dr. Steiner's opinion of [the claimant's] work limitations nor gave specific and legitimate reasons for rejecting it."); *Bain v. Astrue,* 319 F. App'x 543, 545-46 (9th Cir. 2009) (holding ALJ erred in not including consultative examining psychologist's moderate limitations in the RFC, despite specifically crediting these limitations in the opinion); *see also Alexandra H. v. Comm'r Soc. Sec. Admin.*, No. 3:24-cv-01066-SB, 2025 WL 1752360, at *4 (D. Or. June 25, 2025) ("[T]he ALJ was required either to include [the opinion's] limitation in Plaintiff's RFC or explain why he omitted the limitation.") (citations omitted).

Here, the ALJ neither incorporated nor addressed Dr. Friedburg's opinion limiting Plaintiff's ability to sustain an ordinary routine without special supervision. As a result, the Court finds that the ALJ erred in formulating the RFC. *See August S.W. v. Comm'r of Soc. Sec.*, No. 3:26-cv-5045-DWC, 2026 WL 2664271, at *2 (W.D. Wash. Sept. 10, 2026) ("[C]ourts have

frequently distinguished *Stubbs-Danielson* as inapplicable to cases with opined limitations beyond concentration, persistence, or pace." (first citing *Ray*, 2026 WL 1847360, at *6; and then citing *Stubbs-Danielson*, 539 F.3d at 1174)); *Ray*, 2026 WL 1847360, at *7 ("The Court therefore finds that the ALJ's RFC did not adequately address or account for [the medical opinion's] moderate limitation in Plaintiff's ability to 'perform work activities without special or additional supervision.' Because the ALJ credited [the medical] opinion, the ALJ needed to address either (1) how they translated the opined moderate limitations into the RFC, or (2) why they did not." (citing *Stubbs-Danielson*, 539 F.3d at 1174)).

The Court cannot conclude that the ALJ's error was harmless because it is unclear whether the unaddressed moderate limitation would have eliminated the number of available jobs. *See Ray*, 2026 WL 1847360, at *7 ("The Court cannot conclude that the error is harmless as it is not clear whether inclusion of the unaddressed moderate limitation as opined by [the physician] would have eliminated available jobs. . . . Had the ALJ included different limitations in the RFC based upon a proper review of the evidence, the ultimate disability determination may have been different. Accordingly, the Court cannot find that the error was 'inconsequential to the ultimate nondisability determination.'" (quoting *Molina*, 674 F.3d at 1115)). As a result, the Court concludes that the ALJ committed harmful error by failing to address Plaintiff's moderate limitations in his ability to sustain an ordinary routine without special supervision.

### 2. NP Breyer's Opinion

On July 6, 2024, NP Breyer conducted a Complex Psychological Assessment. (Tr. 578.) NP Breyer diagnosed Plaintiff with "Bipolar I-current episode manic," "PTSD but history and reported night terrors," and "R/O Undiagnosed ADHD." (*Id.* at 583.) NP Breyer found that Plaintiff exhibited an "[e]xtreme [l]imitation . . . [with] remembering and implementing" information in his "current state (mania)." (*Id.*) In addition, NP Breyer found that in Plaintiff's

state of mania he also exhibited a "marked" ability to "interact with others," "concentrate, persist or maintain pace," and "adapt or manage oneself," noting that Plaintiff reported "great self discipline." (*Id.*)

**a. The ALJ's Decision**

The ALJ found that NP Breyer's opinion was "not persuasive." (*Id.* at 83.) Specifically, the ALJ determined that NP Breyer's opinion was inconsistent with NP Breyer's own examination, as well as other evidence in the record. (*Id.*)

**b. Disposition**

The Court finds that substantial evidence supports the ALJ's discounting of NP Breyer's opinion.

It is important to consider at the outset that "the threshold for [substantial] evidentiary sufficiency is not high." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek*, 587 U.S. at 103); *cf. Chen v. Bisignano*, No. 25-3588, 2026 WL 1427028, at *1 (9th Cir. May 21, 2026) ("Substantial evidence requires 'more than a mere scintilla' of evidence but does not require more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' when considering the entire record.") (citation omitted).

This is significant because "[u]nder the revised regulations, an ALJ need only provide 'an explanation supported by substantial evidence.'" *Kitchen*, 82 F.4th at 740 (quoting *Woods*, 32 F.4th at 792). To do so, the "ALJ 'must articulate how persuasive [she] finds all of the medical opinions from each doctor or other source[] and explain how [she] considered the supportability and consistency factors in reaching these findings.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792). Consistency concerns the extent to which a "medical opinion is consistent with

the evidence from other medical and nonmedical sources," *Kitchen*, 82 F.4th at 740 (quoting *Woods*, 32 F.4th at 792), and "[s]upportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen*, 82 F.4th at 740 ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence.") (simplified).

The ALJ did not err in evaluating NP Breyer's opinion because the ALJ "provided specific, cogent reasons related to the lack of 'consistency' and 'supportability' of the rejected evidence." *Phillips v. Bisignano*, No. 24-6711, 2025 WL 3090746, at *1 (9th Cir. Nov. 5, 2025) (first quoting 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b); and then citing *Woods*, 32 F.4th at 791-92). The ALJ explained the reasons for discounting NP Breyer's opinion, explaining that NP Breyer's opinion that Plaintiff has "marked-extreme limits is not fully supported by the exam, which, despite [Plaintiff's] mania during the exam, shows generally good performance on memory exercises . . . that he was cooperative and engaged . . . that he was able to do serial 7s and able to spell WORLD backwards and forwards . . . and that he is independent in activities of daily living." (Tr. 83.) Further, the ALJ noted that NP Breyer's opinion was not persuasive because it was "not consistent with the other exams of record or [Plaintiff's] relatively conservative treatment," specifically that Plaintiff testified he "does not take mental health medications (is afraid of them) and takes cannabis solely," as well as the fact that Plaintiff "lives independently and has robust activities of daily living." (*Id.*)

The ALJ's analysis was supported by substantial evidence in the record, specifically that Plaintiff has a consistent routine of "wak[ing] up around 6, 6:30," smokes marijuana, "start[s] [his] stretching routine . . . to work on [his] back, lower and upper, [and his] knees," makes

himself breakfast, takes a shower, heads to the gym and lifts weights "for about an hour," eats, swims for an additional hour, and then goes home to "meditate and contemplate." (*Id.* at 35.) From there, Plaintiff testified that he smokes marijuana again, stretches, "make[s] [himself] a dinner," and then meditates again before sleeping. (*Id.*)

For these reasons, the Court finds that the ALJ did not err in evaluating NP Breyer's opinion. *See Stiffler*, 102 F.4th at 1107 (holding that the "ALJ reasonably concluded that [the claimant's] 'significant' daily activities, as described in her treatment records, undermined [the medical provider's] opinion that [she] suffer[ed] from extreme limitations rendering her unable to function in each of the assessed categories"); *see also Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion.").

## III. VOCATIONAL EVIDENCE

Plaintiff alleges that the ALJ failed to comply with the requirements of Social Security Ruling 24-3p ("SSR 24-3p"), which provides that "VEs [are expected] to identify the sources of the data they use and, where applicable, to explain their general approach to estimating job numbers." SSR 24-3p, 2024 WL 4988840, 97160 (Dec. 6, 2024). The Commissioner argues that Plaintiff waived this argument because he failed to raise it at the hearing. (Def.'s Br. at 10-11, ECF No. 9.)

At the hearing, Plaintiff's counsel had an opportunity to cross examine the VE, but instead of asking questions, Plaintiff's counsel stated, "I think that you have covered the waterfront so . . . aside from saying good morning to [the VE] . . . I don't have any questions." (Tr. 44.)

The Ninth Circuit has held that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on

appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), as amended (June 22, 1999). Indeed, the Social Security Ruling on which Plaintiff relies expressly provides that "[a]t the hearing level, when the claimant is represented, we expect the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." SSR 24-3p, 2024 WL 4988840 at 97160; *see also id.* at 97160 n.10 ("Raising relevant questions about or challenges to the VE's testimony at the time of the hearing, when the VE is ready and available to answer them, furthers the efficient, fair, and orderly conduct of the administrative decision-making process.").

The Court finds that because Plaintiff's counsel did not raise this issue at the hearing, Plaintiff has waived the argument on appeal. *See Madison v. Bisignano*, No. 2:25-cv-1710 AC, 2026 WL 1162741, at *8 (E.D. Cal. Apr. 29, 2026) ("The undersigned concludes that the ALJ reasonably relied on the [VE]'s cogent responses, which were not challenged when they were provided, and that plaintiff waived her challenge on this issue. Accordingly, the court finds no error.") (simplified); *see also Avol v. Sec'y of Health & Hum. Servs.*, 883 F.2d 659, 661 (9th Cir. 1989) (declining to address the plaintiff's argument because the plaintiff failed to raise the issue at the administrative level); *Montgomery v. Astrue*, No. CV 10-1037-SI, 2012 WL 14027, at *7 (D. Or. Jan. 4, 2012) (declining to consider the plaintiff's challenge that the ALJ "should have asked the vocational expert to consider the effects of his alleged hearing limitation" where he failed to raise the objection at the hearing).

///

///

///

///

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and remands for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 20th day of November 2026.

Stacie F. Beckerman

HON. STACIE F. BECKERMAN
United States Magistrate Judge